UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
DETROIT DIVISION

COURTNEY MACK,

  Plaintiff,

CASE NO.:

-VS-

ALLY FINANCIAL INC.,

  Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

    COMES NOW Plaintiff, COURTNEY MACK, by and through the undersigned counsel, and sues Defendant, ALLY FINANCIAL INC., and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA").

**INTRODUCTION**

    1.    The TCPA was enacted to prevent companies like ALLY FINANCIAL INC. from invading American citizen's privacy and prevent abusive "robo-calls."

    2.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

    3.    "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

1

4. According to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints…Some private analyses estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016." https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing.

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The current principal place of business of Defendant is in Detroit, Michigan. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(1) as it is the judicial district in which Defendant resides.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Mississippi, residing in DeSoto County, Mississippi.

10. Plaintiff is an "alleged debtor."

11. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

12. Defendant is a corporation which was formed in Delaware with its principal place of business located at 500 Woodward Ave, Detroit, Michigan 48226 and conducts business in the State of Michigan through its registered agent The Corporation Company, 40600 Ann Arbor Road E, Suite 201, Plymouth, Michigan 48170.

13. Defendant called Plaintiff on Plaintiff's cellular telephone approximately two-thousand (2,000) times in an attempt to collect a debt. Due to the amount of calls received, Plaintiff was unable to adequately catalogue each call and thus an accurate number of calls will be determined after a thorough review of Defendant's records and Plaintiff's cell phone records.

14. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (206) ***-6552 and was the called party and recipient of Defendant's calls.

15. Defendant placed an exorbitant number of automated phone calls to Plaintiff's cellular telephone (206) ***-6552 in an attempt to collect on an alleged debt.

16. Plaintiff knows some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff knows this because of the vast number of calls she received and because she heard a pause when she answered her phone before a live agent came on the line. Further, she received prerecorded messages from Defendant.

17. The calls at issue were placed by the Defendant using a "prerecorded voice" as specified by the TCPA, 47 U.S.C. 227(b)(1)(A), and such prerecorded messages from the Defendant were left in Plaintiff's cell phone voice mail after she had requested for the calls to stop.

18. Plaintiff will testify that she knew it was an autodialer (or predictive dialer) because after waiting through the long pause for an agent to get on the line, there were commonly different agents who came onto the line to speak to her.

19. Plaintiff will testify that often when answering calls from the Defendant, there was no one on the line to speak with her and no one ever came to the line.

20. On several occasions since Defendant's campaign of calls began, Plaintiff instructed Defendant's agent(s) to stop calling her cellular telephone.

21. In or about January of 2019, Plaintiff communicated with Defendant's agent/representative and explained that the vehicle had been totaled. Plaintiff then demanded that Defendant's agent/representative cease calling her cellular telephone number.

22. Despite clearly and unequivocally revoking any consent Defendant may have believed they had to call Plaintiff on her cellular telephone, Defendant continues to place automated calls to Plaintiff.

23. Each subsequent call Defendant made to Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

24. Again, in or about February of 2019, Plaintiff communicated with Defendant's agent/representative and again demanded Defendant's agent/representative cease calling her cellular telephone number.

25. Plaintiff's numerous requests for the harassment to end were ignored.

26. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

27. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant, to remove the number.

28. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff; despite these individuals explaining to Defendant they wish for the calls to stop.

29. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

30. Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

31. Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

32. Defendant's corporate policy provided no means for Plaintiff to have her number removed from Defendant's call list.

33. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

34. Not a single call placed by Defendant to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

35. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

36.     From each and every call placed without consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

37.     From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

38.     From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

39.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

40. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

41. Each and every call placed without express consent by Defendant to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

42. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

43. As a result of the calls described above, Plaintiff suffered an invasion of privacy.

## COUNT I
### (Violation of the TCPA)

44. Plaintiff fully incorporates and re-alleges paragraphs one (1) through forty-three (43) as if fully set forth herein.

45. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that she wished for the calls to stop.

46. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against ALLY FINANCIAL INC. for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

_____
Octavio Gomez, Esquire
Florida Bar No.: 0338620
Morgan & Morgan, Tampa, P.A.
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
Primary Email: TGomez@ForThePeople.com
Secondary Email: LDobbins@ForThePeople.com
*Attorney for Plaintiff*